UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Raymond R. Gadreault,

        Plaintiff,

        v.

Judge Robert Bent, Jennifer Barrett,
Phil Danielson, Walter Smith,
Richard Berlandy, Debra Munson,
Phil Scott, Edward Fournier,
Pat Frawley, Jim Baker, Nicholas Deml,

        Defendants.

Civil Action No. 2:20–cv–83–kjd

## REPORT AND RECOMMENDATION
(Docs. 9, 11)

Raymond R. Gadreault, proceeding *pro se* and *in forma pauperis*, has filed a Motion

Requesting Leave to File a Second Amended Complaint (SAC) (Doc. 9). In the proposed SAC,

Gadreault alleges violations of his constitutional rights in connection with a criminal prosecution

pending against him in Vermont Superior Court. He names as Defendants Vermont Superior

Court Judge Robert Bent; Vermont State's Attorneys Jennifer Barrett and Phil Danielson;

Vermont State Police (VSP) Troopers Walter Smith, Richard Berlandy, and Debra Munson;

Governor Phil Scott; Edward Fournier of "Adult Protection Services"; "Pat Frawley Executive

Director of [the] Vermont Crisis Intervention Network"; and "Acting Director of the [Vermont]

Department of Corrections" (DOC) Jim Baker.[1]  (Doc. 9-1.)  By separate Motion to Add an

---

[1]  Since the filing of this action, Nicholas Deml has succeeded James Baker as DOC Commissioner.  To the extent that Gadreault's proposed SAC names former interim Commissioner Baker in his official capacity, Commissioner Deml is automatically substituted as a party.  *See* Fed. R. Civ. P. 25(d).

Additional Defendant, Gadreault seeks to add state Probation Officer Arthur Gibney as a

Defendant to the proposed SAC.  (Doc. 11.)

　　For the reasons set forth below, I recommend DENYING Gadreault's Motion for Leave

to File a Second Amended Complaint (Doc. 9), and DENYING his Motion to Add an Additional

Defendant (Doc. 11).

## **Background**

### I.    **Facts**

　　The following facts are based on Gadreault's proposed SAC, which the Court accepts as

true for purposes of review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  *See Erickson v.*

*Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56

(2007)).  Gadreault's lawsuit arises from his arrest on October 30, 2019.  (Doc. 9-1 at 1, 2.)

Specifically, he alleges the following:

> V[ermont] State Troopers Richard Berlandy and Debra Munson under the orders
> [of] Derby Trooper Walter Smith[,] along with several sheriffs[,] came to my home
> on Oct[ober] 30[, 2019] without a warrant of any kind[,] including not having a
> search warrant[,] were searching the house by looking through [the] windows[,] to
> say nothing about the fact that they were screaming and hollering and banging on
> the windows to intimidate those of us in the home[,] and of course this is a clear
> violation of the 4th [A]mendment.  The home security caught their actions on
> camera, with voice.

(*Id.* at 1.)  Gadreault claims that Smith, Berlandy, and Munson "searched [his] home without a

warrant and took [him] in[to] custody without reading [him] [his] Miranda [r]ights, which still

have not been read or explained to [him]."  (*Id.* at 2.)  After his arrest, Gadreault appeared before

Judge Bent, who set Gadreault's bail at $75,000.  (*Id.* at 1, 2.)

　　Gadreault asserts that "because of the lack of a trial[,] [he] was incarcerated at the

Newport, Vt. jail for 2 months[,] November and December of 2019[,] and since that time [he]

ha[s] been under house arrest."  (*Id.* at 1.)

## II.    Procedural History

### A.    The Initial Complaint and First Amended Complaint

On June 1, 2020, Gadreault filed his initial Complaint against Judge Robert Bent, State's Attorneys Jennifer Barrett and Phil Danielson, VSP Troopers Richard Berlandy and Debra Munson, and VSP Lieutenant Walter Smith, claiming that they "conspired to violate [his] civil rights." (Doc. 4.)  On July 14, 2020, Magistrate Judge Conroy recommended dismissal of Gadreault's Complaint. (Doc. 3 at 5.)  Judge Conroy determined that judicial immunity barred Gadreault's claims against Judge Bent (*id.* at 3), and prosecutorial immunity appeared to bar the claims against Defendants Barrett and Danielson (*id.* at 4).  Regarding the remaining Defendants, the Court concluded that the Complaint failed to meet the Rule 8 pleading standard as it was "devoid of any factual allegation of wrongdoing against identifiable defendants and contains only conclusory references to constitutional rights having been violated." (*Id.* at 3–4.)  On August 4, 2020, Judge Sessions adopted the Report and Recommendation, dismissing Gadreault's Complaint under 28 U.S.C. § 1915 and granting leave to amend the Complaint. (*See* Doc. 6.)

On August 28, 2020, Gadreault filed his First Amended Complaint (FAC) against the same Defendants. (Doc. 7.)  He alleged that Judge Bent violated his Fourth, Fifth, Seventh, and Eighth Amendment rights. (*Id.* at 1.)  Gadreault alleged Judge Bent violated his rights when he denied Gadreault an attorney, remanded him to custody, and set an excessive cash bail of $75,000.  As a result of the allegedly excessive bail amount, Gadreault spent over two months in jail "miles from [his] home and unable to see family." (*Id.*)

Gadreault also alleged that Defendant Berlandy "outright lied in his affidavit, and then when he arrested [Gadreault] never read[ ] [him] [his] rights" (Doc. 7 at 2); Defendant Smith

"was derelict in his duties allowing Trooper Berlandy to get away with his actions" (*id.*); and Defendant Munson "committed perjury at [his] bail hearing stating she was only at the home for 8 minutes when in real[i]ty it was over 31 minutes" (*id.*).  Gadreault alleged that these three Defendants "came to [his] home to arrest [him], . . . knocked on the door, . . . and instead of waiting for [him] to open the door[,] they pounded thr[ough] it with a battering ram."  (*Id.*) Finally, Gadreault alleged prosecutors Barrett and Danielson "took part in this by persecuting [sic] [Gadreault] [in] Orleans County Court."  (*Id.*)

The District Court dismissed Gadreault's FAC under 28 U.S.C. § 1915.  (Doc. 8.)  The Court again dismissed the claims against Judge Bent and the State's Attorneys based on judicial and prosecutorial immunity.  (*Id.* at 4–5.)  Gadreault did not specify whether he sought to bring claims against Defendants in their individual or official capacities, nor did he specify the type of relief he sought from them.  (*Id.* at 6.)  Because the Eleventh Amendment would bar any claims for damages against Berlandy, Smith, and Munson in their official capacities, the District Court dismissed the remainder of his FAC.  (*Id.* at 7–9.)  The Court did not grant Gadreault leave to amend the FAC, but instead permitted him to file a motion for leave to file a second amended complaint.  (*Id.* at 8.)

B.    Proposed Second Amended Complaint

Gadreault requested leave to amend on March 9, 2021.  (Doc. 9.)  The proposed SAC asserts violations of his rights under the United States and Vermont Constitutions.  (Doc. 9-1 at 1–2.)  He brings these claims against the same Defendants listed in the FAC, as well as the following additional Defendants: Governor Phil Scott; Pat Frawley, Executive Director of the Vermont Crisis Intervention Network; Edward Fournier of "Adult Protection Services"; and Jim Baker, "Acting Director of the Department of Corrections."  (*Id.* at 1–2.)  According to the

4

2:20-cv-00083-wks-kjd    Document 12    Filed 03/03/22    Page 5 of 24

proposed SAC, Governor Scott was allegedly "complicit" with State's Attorneys Barrett and

Danielson in denying Gadreault's speedy-trial rights.  (*Id.* at 1.)  As to Frawley, the only

allegation is that "when asked to remove Joey Gacy from our home [he or she] failed to do so."

(*Id.* at 2.)  Fournier's claimed liability appears to be based on the general allegation that he

"committed perjury on the stand."  (*Id.*)  The proposed SAC does not include any factual

allegations pertaining to then-Acting DOC Commissioner Baker, noting only his position within

the DOC.

Gadreault requests $100,000 in damages individually from Defendants Judge Bent,

Barrett, Danielson, Baker, and Fournier, and $50,000 in damages from Smith, Berlandy,

Munson, and Frawley.  (*Id.*)  He does not appear to seek any relief from Governor Scott.

Gadreault also states that he "[is] retaining the right to add other defendants to this suit as it

comes to light that they also took part in these civil rights violations."  (*Id.*)

### C.    Motion to Add An Additional Defendant

Gadreault moved on March 29, 2021 to add "Probation Parole Officer Arthur Gibney to

this lawsuit for violating [his] civil rights."  (Doc. 11.)  Gadreault claims that Gibney owes him

"$100,000 for violation of [his] civil rights under both the United States [C]onstitution and the

Vermont Constitution," and "another $100,000 for the pain and suffering Arthur Gibney has

caused [him]."  (*Id.* at 1, 2.)  Gadreault appears to allege generally that Gibney has imposed

unnecessarily restrictive conditions on Gadreault during his pretrial supervision.  (*Id.* at 1.)

### Discussion

### I.    Motion for Leave to File a Second Amended Complaint

Gadreault's proposed SAC appears to contain many of the same claims that he alleged in

his FAC.  As explained below, absolute immunity doctrines continue to bar Gadreault's claims

against Judge Bent and State's Attorneys Barrett and Danielson.  The Eleventh Amendment bars

Gadreault's claims against the state employee Defendants in their official capacities for monetary

damages.  To the extent Gadreault alleges claims against Defendants in their individual

capacities, these should be dismissed for failure to state a plausible claim.

### A.    Governing Legal Standards

#### 1.    Federal Rule of Civil Procedure 15

"A party may amend its pleading once as a matter of course."  Fed. R. Civ. P. 15(a)(1).

"In all other cases, a party may amend its pleading only with the opposing party's written

consent or the court's leave."  Fed. R. Civ. P. 15(a)(2); *see Knife Rights, Inc. v. Vance*, 802 F.3d

377, 389 (2d Cir. 2015).[2]  Under Rule 15(a), "[t]he court should freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to

grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200

(2d Cir. 2007).  "Although the decision whether to grant leave to amend is within the discretion

of the district court, refusal to grant leave must be based on a valid ground."  *Oliver Schs., Inc. v.*

*Foley*, 930 F.2d 248, 253 (2d Cir. 1991).  "A district court has discretion to deny leave for good

reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."

*McCarthy*, 482 F.3d at 200 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility is a

determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies

or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Panther*

*Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

#### 2.    Prisoner Litigation Reform Act

Under 28 U.S.C. § 1915(e)(2)(B), the Court must conduct an initial screening of

complaints filed by civil litigants proceeding *in forma pauperis*.  In conducting this screening,

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and
alterations.

the Court is required to read a *pro se* plaintiff's complaint liberally and to construe it to raise the strongest arguments it suggests. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam). Nevertheless, the Court must dismiss a complaint filed *in forma pauperis* if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also id.* § 1915A(b); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("Sections 1915 and 1915A recite identical grounds for dismissal, and we have found both sections applicable to prisoner proceedings *in forma pauperis*."). However, "courts must take care lest judicial haste in dismissing a complaint in the long run makes waste." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam). A court should not dismiss a complaint sua sponte "unless it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective." *Mojias v. Johnson*, 351 F.3d 606, 610–11 (2d Cir. 2003).

A complaint is "frivolous" under § 1915 if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Specifically, an action is considered "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy"; or (2) "the claim is 'based on an indisputably meritless legal theory.'" *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (quoting *Neitzke*, 490 U.S. at 327). In particular, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). A claim is based on a meritless legal theory when either the claim lacks an arguable basis in law, *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint, *Pino v. Ryan*, 49 F.3d 51, 53

7

(2d Cir. 1995); *see also id.* ("[W]e have frequently urged district judges to use caution in deciding whether to dismiss such complaints prior to service upon defendants and the filing of a motion or answer. . . . But caution need not lead to paralysis, and whenever a district court is satisfied that a complaint is based on an indisputably meritless legal theory, it has the discretion to dismiss the case under section 1915[(e)].").

In reviewing a complaint to determine whether it states a viable claim, the Court "accept[s] as true all factual allegations in the complaint" and draws inferences from these allegations in the light most favorable to the plaintiff. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). Dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is then only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* A district court must dismiss the complaint if it determines that it fails to state a claim upon which relief may be granted. *Id.* at 596 (observing that under § 1915(e) "dismissal for failure to state a claim is mandatory").[3]

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only when the facts in the complaint support a "reasonable inference" that the defendant is liable for the purported misconduct. *Id.* These factual allegations need not be detailed. *Twombly*, 550 U.S. at 555. The allegations must, however, present "more than a sheer possibility the defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. Although the Court must afford "special solicitude" to the

---

[3] In addition, Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint that fails to comply with this rule presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of plaintiff's claims." *Dallio v. Hebert*, 678 F. Supp. 2d 35, 51 (N.D.N.Y. 2009).

allegations of a *pro se* plaintiff, the complaint nevertheless must satisfy *Iqbal*'s plausibility standard. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Finally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

> **B.      Absolute immunity continues to bar Gadreault's claims against Judge Bent and State's Attorneys Barrett and Danielson.**

Judges and prosecutors generally enjoy immunity for actions undertaken within the scope of their judicial and prosecutorial duties. As the allegations in Gadreault's proposed SAC relate to actions within the scope of their respective duties, judicial and prosecutorial immunity bars the claims against Judge Bent and State's Attorneys Barrett and Danielson.

> **1.      Judge Bent's bail decision in Gadreault's case falls within the scope of his judicial authority and therefore he is immune from liability.**

Gadreault alleges that Judge Bent violated his Eighth Amendment rights when he "set an excessive amount of bail." (Doc. 9-1 at 1.) As the Court explained in its Order Dismissing Amended Complaint (Doc. 8), judicial officers are immune from liability for damages for "acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Because judicial immunity is not for the protection of the judge, but rather "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences," *id.*, it applies to shield judges against even "allegations of bad faith or malice . . . [or] 'because the action he took was in error. . . or was in excess of his authority,'" *Mireles v. Waco*, 502 U.S. 9, 11, 13 (1991) (second omission in original) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Immunity yields only in cases challenging "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity," or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11, 12.

Absolute judicial immunity continues to bar Gadreault's claims against Judge Bent. The proposed SAC challenges Judge Bent's setting of bail, an act clearly within the judicial function. Because Gadreault does not plausibly allege that Judge Bent engaged in nonjudicial actions or otherwise acted in the absence of all jurisdiction, the doctrine of judicial immunity bars his claims. Accordingly, the Court lacks subject matter jurisdiction over this claim. *See id.* at 11 (explaining "judicial immunity is an immunity from suit"); *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 312 (E.D.N.Y. 2006) (noting a district court "may, sua sponte, dismiss a complaint for lack of subject matter jurisdiction, based on a finding of judicial immunity").

Therefore, I recommend that Judge Bent be dismissed as a defendant in this action.

### 2. Prosecutorial immunity bars Gadreault's claims against Barrett and Danielson for alleged speedy-trial violations.

Gadreault alleges State's Attorneys Barrett and Danielson "have been complicit in denying [his] right to a speedy trial" in violation of the Sixth Amendment. (Doc. 9-1 at 1–2.) He specifically alleges that he has been held without a trial "for over 16 months." (*Id.* at 1.) He further alleges that Barrett and Danielson violated his Fifth Amendment right to "life, liberty[,] or the pursuit of happiness." (*Id.* at 2.)

The District Court reviewed the law of prosecutorial immunity in its Order Dismissing the Amended Complaint (Doc. 8 at 4–6), and this Report and Recommendation reiterates the relevant principles here. A prosecutor is immune from "suits for damages when he [or she] acts within the scope of his [or her] prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). Prosecutors are entitled to absolute immunity for those activities "intimately associated with the judicial phase of the criminal process." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Imbler*, 424 U.S. at 430). Absolute immunity from § 1983 liability covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as

an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). A prosecutor is therefore "absolutely immune from civil liability for initiating a prosecution and presenting the case at trial." *Hill*, 45 F.3d 661. Even where there are allegations of a prosecutor's "knowing use of perjured testimony" or "deliberate withholding of exculpatory information," the prosecutor is not "amenable to a civil suit for damages." *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Imbler*, 424 U.S. at 431 n.34). "[I]f as a result of prosecutorial misconduct, a defendant is compelled to face prosecution, or to suffer imprisonment or pretrial detention, the harm cannot be redressed via a § 1983 civil rights suit." *Taylor v. Kavanagh*, 640 F.2d 450, 453 (2d Cir. 1981).

Gadreault's claims against State's Attorneys Barrett and Danielson remain barred by the doctrine of prosecutorial immunity. Gadreault has not plausibly alleged that Barrett or Danielson took any actions outside the scope of their prosecutorial authority in pursuing his criminal prosecution. *See Shmueli*, 424 F.3d at 236. Any actions that they allegedly undertook in connection with his prosecution—including their alleged delay of that trial—fall within the ambit of their prosecutorial duties. *See Hill*, 45 F.3d at 661; *see also Fobbs v. City of New York*, No. 15-CV-6736 (PKC), 2017 WL 2656207, at *4 (S.D.N.Y. June 19, 2017) (holding that prosecutors' repeated delays of defendant's court date were immune from Sixth Amendment speedy-trial claim).

Accordingly, the Court lacks subject matter jurisdiction over Gadreault's claims against Barrett and Danielson for alleged trial delays. *See Shmueli*, 424 F.3d at 237 ("Because the immunity attaches to the official prosecutorial function and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, the prosecutor has absolute

immunity for the initiation and conduct of a prosecution unless [he or she] proceeds in the clear absence of all jurisdiction.").

Therefore, I recommend dismissing Gadreault's claims against State's Attorneys Barrett and Danielson.

### C.    To the extent Gadreault sues the remaining Defendants in their official capacities for damages, the Eleventh Amendment bars his claims.

The remaining Defendants are VSP Troopers Berlandy and Munson, VSP Lieutenant Smith, Governor Phil Scott, Pat Frawley of the Vermont Crisis Intervention Network,[4] Edward Fournier of Adult Protective Services,[5] and DOC Commissioner Nicholas Deml.  (Doc. 9-1 at 1, 2.)  He claims that "[t]his [s]uit is for the violation of [his] [c]ivil [r]ights [u]nder the following Amendments[:] 1st, 4th, 5th, 6th, 8th, and 9th."  (*Id.* at 1.)

Because these Defendants all appear to be state employees, Gadreault may be alleging a claim under 42 U.S.C. § 1983.  Under § 1983, a claimant may bring suit against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or

---

[4]  Under Federal Rule of Evidence 201(b), the Court takes judicial notice that the Vermont Crisis Intervention Network (VCIN) is the designated "statewide developmental disabilities service system crisis network." The Developmental Disabilities Service Division of the Department of Disabilities, Aging, and Independent Living (DDAI)—a Vermont state agency operating under 33 V.S.A. § 504—provides a "gatekeeper function for access to the VCIN."  *Developmental Disabilities Service Division: Vermont Crisis Intervention Network*, Vermont Official State Website, https://ddsd.vermont.gov/vermont-crisis-intervention-network (last accessed Jan. 11, 2022).  It is unclear whether this organization is itself a state agency, or if it operates under the authority of the DDAI.  *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided . . . .").  To the extent it is a state agency, and that the VCIN employed Frawley at the time, sovereign immunity bars Gadreault's claims against Frawley in his official capacity.  However, Gadreault has also failed to state a claim upon which relief can be granted against Frawley, as discussed in Part D.4, *infra*.

[5]  Under Federal Rule of Evidence 201(b), the Court takes judicial notice that Vermont's Adult Protective Services program operates under the DDAI's Division of Licensing and Protection and derives its power from Title 33 of Vermont's statutory law.  *See Developmental Disabilities Service Division: Division of Licensing and Protection*, Vermont Official State Website, https://dlp.vermont.gov/aps (last accessed Jan. 11, 2022).  To the extent that Fournier's employment at Adult Protective Services renders him a state employee, sovereign immunity bars Gadreault's claims against Fournier in his official capacity.  However, Gadreault has also failed to state a claim upon which relief can be granted against Fournier in his individual capacity, as discussed in Part D.3, *infra*.

causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

In order to assert a claim under § 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (omission in original) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Section 1983 provides a statutory remedy for violations of the federal Constitution and other federal laws. *See Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (stating the statute is "not itself a source of substantive rights" but rather "provides a method for vindicating federal rights elsewhere conferred"). The statute occupies a position of "primacy . . . in providing [a] basis for securing redress for constitutional violations." *Pauk v. Bd. of Trs. of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981).

Suits against a state actor in his or her official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent," and "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State. . . . [T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.").

13

Although Gadreault does not specify the capacity in which he seeks to sue these Defendants, the Eleventh Amendment bars a claim for monetary damages against a state employee in his or her official capacity.  The Supreme Court has interpreted the Eleventh Amendment to bar private suits for retrospective relief against a state in federal court, absent consent to suit by the state or valid congressional abrogation of this immunity.  *See Alden v. Maine*, 527 U.S. 706, 754 (1999) ("Our sovereign immunity precedents establish that suits against nonconsenting States are not properly susceptible of litigation in courts, and, as a result, that the entire judicial power granted by the Constitution does not embrace authority to entertain such suits in the absence of the State's consent . . . ." (cleaned up)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." (internal quotation marks omitted)); *Hans v. Louisiana*, 134 U.S. 1, 17 (1890) ("Undoubtedly a state may be sued by its own consent. . . .").

Neither waiver nor abrogation applies in a § 1983 claim against a state official in federal court.  *See* 12 V.S.A. § 5601(g) (establishing Vermont has not waived its sovereign immunity); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989) (holding that in enacting § 1983, Congress did not abrogate state sovereign immunity under the Eleventh Amendment).  Accordingly, Gadreault cannot assert claims for damages against a state employee in his or her official capacity in federal court.  *See Rivera v. Lempke*, 810 F. Supp. 2d 572, 574 (W.D.N.Y. 2011) ("Claims for damages against state employees in their official capacities are deemed claims against the state itself, and are barred by the Eleventh Amendment."); *see also McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (noting a court may raise sua sponte state sovereign immunity as a bar to federal subject matter jurisdiction).  Therefore, I recommend dismissing any

14

official-capacity claims Gadreault may be asserting against Berlandy, Smith, Munson, Scott, Frawley, Fournier, and Deml.

**D.    Gadreault's remaining claims against Defendants in their individual capacities should be screened under § 1915.**

Although sovereign immunity bars claims for damages against state employees in their official capacities, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and are thus subject to suit. *Hafer*, 502 U.S. at 31. Nevertheless, to the extent that Gadreault brings his damages claims against Berlandy, Smith, Munson, Scott, Frawley, Fournier, and Baker in their individual capacities, I recommend that Gadreault's claims be dismissed for failure to state claims upon which relief may be granted.

**1.    Gadreault's proposed SAC does not state a plausible § 1983 claim against Defendant Governor Phil Scott.**

To the extent that the proposed SAC may be raising a § 1983 claim against Defendant Governor Phil Scott, I recommend dismissing the claim because (i) Gadreault's allegations are vague and conclusory; and (ii) Gadreault's allegations do not assert facts plausibly showing Governor Scott's personal involvement in the alleged constitutional violations.

Gadreault's Sixth Amendment claim against Governor Scott reduces to the following:

> The [s]tate of Vermont under Governor Phil[] Scott assisted by State[']s Attorneys Jennifer Barrett and Phil Danielson have been complicit in denying my right to a speedy trial[.] [B]ecause of the lack of a trial[,] I was incarcerated at the Newport, Vt. jail for 2 months[—]November and December of 2019[—]and since that time I have been under house arrest. So, for over 16 months I have been held without a trial[.] [T]his is without a doubt a violation of [m]y right[ ] to a speedy trial and a clear violation of the 6th [A]mendment.

(Doc. 9-1 at 1–2.) Gadreault's Fifth Amendment claim is that the Governor and the other Defendants "have all violated [his] right[] under the 5th Amendment [to] not be deprived of life, liberty[,] or the pursuit of happiness." (*Id.* at 2.) He also generally notes that the Vermont Constitution requires that individuals obtain justice "without any delay." (*Id.*) The allegation

that Governor Scott was complicit with state prosecutors in denying Gadreault's right to a speedy trial is vague in its assertions and conclusory in its claim of legal liability. It fails to state a claim on this ground alone.

Gadreault's claim against Governor Scott also fails because the proposed SAC offers no facts demonstrating Scott's personal involvement in the alleged violation of his rights. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). A litigant can only plead that an official committed a constitutional deprivation "through the official's own individual actions." *Iqbal*, 556 U.S. at 676. Even if the violation is alleged against a supervisory official, that "violation must be established against the supervisory official directly." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official who is directly involved "includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014); *see also Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135–36 (2d Cir. 2013) (holding that a plaintiff proceeding under § 1983 must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation); *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (holding that a § 1983 claim that fails to allege the personal involvement of the defendant fails as a matter of law).

Gadreault's proposed SAC does not plausibly allege facts suggesting Scott's personal involvement in the alleged Sixth Amendment violation. He alleges only that Scott was "complicit in denying [his] right to a speedy trial" with State's Attorneys Barrett and Danielson. (Doc. 9-1 at 1.) However, nonspecific allegations "that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient

to state a claim." *Leneau v. Ponte*, 1:16-cv-776-GHW, 2018 WL 566456, at *15 (S.D.N.Y. Jan

25, 2018); *see also Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001) (observing

that Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each

defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," and that

a complaint fails to meet that minimum where it "lump[s] all the defendants together in each

claim and provid[es] no factual basis to distinguish their conduct"). Similarly, Gadreault's

allegation that "they have all violated [his] rights under the 5th Amendment" (Doc. 9-1 at 2) is

insufficient to state a claim. Gadreault's general allegation that Scott was "complicit" in the

alleged violation of his rights is insufficient to state a claim.

As the proposed SAC fails to state a claim against Governor Scott, I recommend that the

Court dismiss Gadreault's claims against Scott. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. Gadreault has not stated any facts demonstrating Defendant Baker's personal involvement in a violation of Gadreault's constitutional rights.

Gadreault lists Defendant Baker as a Defendant in the caption of the proposed SAC (*see*

Doc. 9-1 at 1), and requests $100,000 in damages from him (*see id.* at 2), but he does not allege a

specific violation of his rights or otherwise allege any actionable conduct by Baker. This is

wholly insufficient to state a claim against Baker. Because Gadreault does not make any

substantive allegations as to Defendant Baker, he necessarily fails to state his personal

involvement in any constitutional violation. *Cf. Clay v. Lee*, No. 13-CV-7662 (KMK), 2019 WL

1284290, at *4 (S.D.N.Y. Mar. 20, 2019) (collecting cases for the proposition that personal

involvement is not established where the defendant's name appears only in the caption of the

complaint).

Gadreault makes no allegations that DOC personnel violated his federal rights in any

way. Even if he did make such a claim, it would not state a claim against Defendant Baker. A

plaintiff cannot "base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003); *see also Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (holding that "[a]n individual cannot be held liable for damages under § 1983 merely because he held a high position of authority"). Accordingly, Gadreault's proposed SAC fails to state a claim against Baker upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). I recommend dismissing Defendant Baker from the case.

### 3.    Gadreault does not state a claim against Defendant Fournier.

Even liberally construed, Gadreault's proposed SAC fails to allege a plausible claim against Defendant Fournier of "Adult Protective Services." Gadreault's only allegation regarding Defendant Fournier is that he "committed perjury on the stand." (Doc. 9-1 at 2.) Gadreault does not state when Fournier allegedly committed perjury, what the allegedly perjured statements were, or how Fournier's allegedly perjured statements injured him. Therefore, Gadreault's proposed SAC fails to state a claim against Fournier upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i). I recommend dismissing Gadreault's claim against Defendant Fournier.

### 4.    Gadreault does not state a claim against Defendant Frawley.

Gadreault's proposed SAC also fails to allege a plausible claim against Defendant Frawley. Gadreault alleges only that "when asked to remove Joey Gacy from [his] home," Frawley "failed to do so." (Doc. 9-1 at 2.) Gadreault does not identify who Joey Gacy is. He also does not explain why Frawley was obligated in any way to remove Mr. Gacy from the home, or explain why Frawley's alleged failure to remove him from Gadreault's home resulted in a constitutional violation. In short, he has provided no facts that support a legal claim against

Defendant Frawley.  Gadreault's proposed SAC fails to state a claim against Frawley upon

which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  I recommend dismissing

Gadreault's claim against Defendant Frawley.

> **5.**    **Gadreault has not stated a cognizable § 1983 claim based on the allegation that Defendants Smith, Berlandy, and Munson did not advise him of his *Miranda* rights.**

Gadreault appears to assert that Defendants Smith, Berlandy, and Munson violated his

Fifth Amendment rights because all three Officers "took [him] in[to] custody without reading

[him] [his] Miranda [r]ights, which still have not been read or explained to [him] at this date."

(Doc. 9-1 at 2.)  However, "*Miranda* violations, absent coercion, do not rise to the level of

constitutional violations actionable under § 1983." *Jocks v. Tavernier*, 316 F.3d 128, 138

(2d Cir. 2003); *see also id.* ("[M]aking provocative statements in front of a suspect who has

insisted on having his lawyer present and asking if the statements are accurate is simply a run-of-

the-mill *Miranda* violation, which can taint the evidence but is not independently actionable as a

civil rights claim.").  Rather, "[t]he appropriate remedy for violations of *Miranda* rights is

exclusion of the evidence at trial." *Id.*; *see also Chavez v. Martinez*, 538 U.S. 760, 772 (2003)

("We have likewise established the *Miranda* exclusionary rule as a prophylactic measure to

prevent violations of the right protected by the text of the Self-Incrimination Clause—the

admission into evidence in a criminal case of confessions obtained through coercive custodial

questioning.").

Gadreault's remedy for any alleged *Miranda* violation is the exclusion of evidence at his

criminal trial.  Gadreault has failed to state an actionable violation of his Fifth Amendment rights

under § 1983.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  I recommend dismissing Gadreault's Fifth

Amendment claim against Defendants Smith, Berlandy, and Munson.

6.    **Gadreault has not sufficiently pleaded a claim under the Fourth Amendment to withstand screening under 28 U.S.C. § 1915.**

Gadreault alleges that Defendants Smith, Berlandy, and Munson violated his Fourth Amendment rights by conducting a warrantless search of his home. He specifically alleges that Defendants:

> came to [his] home . . . without a warrant of any kind[,] including not having a search warrant[,] were searching the house by looking through [the] windows[,] to say nothing about the fact that they were screaming and hollering and banging on the windows to intimidate those of us in the home[,] and of course this is a clear violation of the 4th [A]mendment.

(Doc. 9-1 at 1; *see also id.* at 2 (claiming that "Walter Smith, Richard Berlandy, and Debra Munson . . . violated [his] 4th and 5th amendments [and] also searched [his] home without a warrant").)

"The warrant requirement of the Fourth Amendment guarantees the fundamental right to be free from government intrusion into the privacy of one's home." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (citing *Payton v. New York*, 445 U.S. 573, 585–86, 589–90 (1980)). Specifically, "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). However, that rule is "directed primarily at warrantless *physical* intrusions into the home." *United States v. Gori*, 230 F.3d 44, 51 (2d Cir. 2000). In general, "visual observation is no 'search' at all" for purposes of the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 32 (2001).

Thus, "[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *United States v. Santana*, 427 U.S. 38, 42 (1976); *see also United States v. Davis*, 326 F.3d 361, 365 (2d Cir. 2003) ("[W]hat a person knowingly exposes to the public through an open door or window does not receive Fourth

Amendment protection . . . .").  This is because "[t]he ultimate focus of Fourth Amendment analysis remains whether the defendant had a reasonable expectation of privacy in the place searched," *United States v. Fields*, 113 F.3d 313, 322 (2d Cir. 1997), and "[g]enerally, the police are free to observe whatever may be seen from a place where they are entitled to be," *id.* at 321; *see also id.* at 321–22 (holding no Fourth Amendment protection where police could see activity from yard "where others were free to come and go" through "a plainly visible five- to six-inch gap beneath the venetian blinds" of first-floor apartment window).  "Absent a reasonable expectation of privacy, . . . the warrant requirement is inapplicable and the legitimacy of challenged police conduct is tested solely by the Fourth Amendment's requirement that any search or seizure be reasonable."  *Gori*, 230 F.3d at 50.

Gadreault alleges only that Defendants Smith, Berlandy, and Munson searched his home "by looking through windows," while "hollering and banging on the windows."  (Doc. 9-1 at 1.)  However, Gadreault's allegation that Defendants conducted a "warrantless" search is conclusory and unsupported by any further factual allegations.  For example, he provides no facts as to whether Defendants looked through his windows "from a place where they [we]re entitled to be."  *See Fields*, 113 F.3d at 321.  Based on the alleged facts, the Court cannot determine whether Gadreault had an expectation of privacy.  As it is not clear he had such an expectation, and assuming that Defendants did not have a search warrant at the time they were looking into his windows, it is also unclear whether "the warrant requirement is inapplicable."  *See Gori*, 230 F.3d at 50.

This is Gadreault's third attempt to state a claim for violation of his Fourth Amendment rights based on VSP activity at his home on October 30, 2019.  In his first Complaint, Gadreault's Fourth Amendment claim consisted of the following: "That I be secure in my home

from unreasonable search and seizure.  No warrants shall be issued but upon probable cause by

oath or affirmation."  (Doc. 4 at 1.)  In his Amended Complaint, Gadreault alleged the following

in support of his Fourth Amendment claim:

> Then there is [Smith, Berlandy, and Munson's] actions when they came to my home
> to arrest me, they knocked on the door, I called out I am coming and instead of
> waiting for me to open the door they pounded thru it with a battering ram which
> they came up to door with and in my mind the only explanation for this is that they
> intended to do this from jump street.

(Doc. 7 at 2.)  The District Court dismissed the Amended Complaint, observing that "[a]s with

his initial Complaint, Plaintiff's Amended Complaint also does not satisfy the basic pleading

standard of Rule 8, as [it] contains only conclusory references to constitutional rights having

been violated."  (Doc. 8 at 6.)  Although the proposed SAC contains additional details

concerning the alleged Fourth Amendment violation, the allegations remain vague and

conclusory, asserting only that VSP officers "were searching the house by looking through

windows [and] screaming and hollering and banging on the windows to intimidate those of us in

the home."  (Doc. 9-1 at 1.)  The proposed SAC does not allege that law enforcement physically

entered the home in any way.  Similar to the initial Complaint and the FAC, these allegations are

insufficient to state a claim for a Fourth Amendment violation.  As Gadreault has had three

opportunities to allege his Fourth Amendment claim against the VSP Defendants, and has been

unable to do so, I recommend that Gadreault's Fourth Amendment claim against Defendants

Smith, Berlandy, and Munson be dismissed.

## II.    Given the recommendation that the proposed SAC be dismissed in its entirety, the Court should deny Gadreault's request to add Probation Officer Arthur Gibney as a defendant.

Gadreault's proposed SAC does not include Probation Officer Gibney.  By motion filed

several weeks after the filing of the proposed SAC, Gadreault requested "to add Probation Parole

Officer Arthur Gibney to this lawsuit for violating [his] civil rights."  (Doc. 11 at 1.)  According

22

to Gadreault, "Gibney has held [him] in home confinement since July 1st[,] 2020[,] even though the court specified by checking a box on the release paper work that stated the Probation Officer in this case[,] Arthur Gibney[,] had the authority to allow [him] access to the community." (*Id.*) Gadreault further asserts that "Arthur Gibney restricted these activities even though when he took over [Gadreault] had been allowed to travel freely [within reason] by [his] supervising officer Shawn Baraw with no problems or violations from December 26th[,] 2019 until July 1st[,] 2020 when Art[h]ur Gibney took over and put in all these restrictions on [him]." (*Id.* (second alteration in original).) As a result, Gadreault claims that Gibney's alleged imposition of these restrictions infringed his constitutional rights "under both the United States [C]onstitution and the Vermont Constitution." (*Id.* at 1–2.)

I recommend that the Motion to add Gibney as a defendant be denied. First, by seeking to add a defendant that he did not include in his proposed SAC, Gadreault has not complied with the District Court's directive that the proposed SAC "set forth all the claims he has against all defendants and all the relief he seeks." (*See* Doc. 8 at 9.) Second, if the Court agrees with the recommendation that the proposed SAC be dismissed in its entirety, the request to add a defendant to the proposed SAC is moot.

**III.    Any supplemental state-law claims should also be dismissed.**

In his proposed SAC, Gadreault appears to bring state-law claims as well, claiming "the [s]tate of Vermont has a management standard to reduce or eliminate delays[,] and these are 3 month and 6-month deadlines. Also, under the Vermont Constitution Chapter 1 Article 4[,] every person ought to obtain rights and justice freely without being obliged purchase and promptly without any delay and without any denial." (Doc. 9-1 at 2.) He also appears to cite several United States Supreme Court and Vermont Supreme Court cases in general support of his proposed SAC. (*Id.*)

23

In cases over which a district court has original jurisdiction, it shall also have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A court may decline to exercise supplemental jurisdiction over state-law claims, however, if the court "has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  If the plaintiff "has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims."  *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Because I recommend dismissing all claims in Gadreault's proposed SAC, I further recommend that the Court decline to exercise supplemental jurisdiction over any state claims.

### Conclusion

For the reasons stated above, I recommend DENYING Gadreault's Motion for Leave to File a Second Amended Complaint (Doc. 9), and DENYING the Motion to Add an Additional Defendant (Doc. 11).

Dated at Burlington, in the District of Vermont, this 3rd day of March 2022.

/s/ Kevin J. Doyle
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).